**DOLT & DEW, INC., Appellant,**

**v.**

**Wardell SMITH and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

April 20, 1973.

James M. Graves, Wesley G. Gatlin, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellant.

Buel L. Cox, Louisville, for appellees.

MILLIKEN, Justice.

Wardell Smith was awarded compensation for total permanent disability by the Workmen's Compensation Board for a severe injury to his left wrist and hand, and' the award was affirmed by the Jefferson Circuit Court on appeal. We affirm.

The accident occurred on March 3, 1969 and the injured hand was operated upon that day by a specialist in hand-surgery, the operation taking between two and a half to three hours. After a few days in the hospital, Smith was permitted to return home to await further therapy which ultimated in more surgery in the following June to remove a tumor which had developed on the hand. Not until a year later was he permitted to return to work on light duty with his same employer at a wage rate slightly in excess of his hourly wage at the time of his injury.

When he testified in January 1971 the operating surgeon said, "In brief, he (Smith) has gone on to progress normally to the point where he now has a residual ulnar involvement on the left hand. This is the ulnar nerve that was—had been lacerated. He showed typical signs of ulnar nerve palsy. He has very little regeneration * * *. He's developed a little more hyper sensitivity * * *." The surgeon said that he last examined Smith in July 1970 when "I thought he had disability of sixty percent to the hand and I still feel that today." He later estimated that 60% disability to the hand amounted to 32.4% disability to the body as a whole.

In November 1971, thirty-two months after Smith's accident and twenty months after his return to work, his employer was forced out of business by bankruptcy. Nearly fifty years of age by then and severely handicapped by the little use he could get from his left hand, Smith sought employment from a half-dozen other organizations without success, being forced to rely on unemployment benefits for the support of his wife, two children and himself until the period of those benefits expired.

In September 1971 (two months before the bankruptcy of Dolt & Dew, Inc.) the highly qualified and experienced executive director of the Louisville Jewish Vocational Service testified, after studying the surgeon's report and testimony and interviewing and observing Smith, that Smith had little chance of securing employment in the Louisville labor market. After describing the observable condition of Smith's injured hand, this witness said:

"The injury to the left hand is a serious one and puts Mr. Smith at a disadvantage in the open labor market. All of his jobs have been of the unskilled and smi-skilled (sic) variety, and have required the use of both hands and arms. With his limited education of nine grades, and his work history limited to just laboring and driving jobs, both of which require the use of both hands and arms, the loss of the left hand to all intents and purposes, is a severe blow.

"A man of forty-nine years of age with a limited education and limited skills and with the handicaps of an injured left hand and a bad knee, will be unable to compete with younger men who are physically fit. It is axiomatic that an employer will hire an able-bodied person over the disabled one, and that he will prefer the individual with two good hands over the one with only one good hand. *If this man, Mr. Smith, should ever lose his job with Dolt and Dew for any reason, he will have much difficulty obtaining another one.* (Emphasis ours.)

"At the present time, there is a 6.1 percent unemployment rate in Louisville, or some 23,100 persons out of work. I have been in Louisville for twenty-five years and find that it is harder to find jobs now than any other period that I can remember. Job placement is one of my responsibilities.

"It should be pointed out also that the injury to the left hand has negated any transferrable skills which Mr. Smith had in terms of his truck and tractor driving abilities * * *."

"Mr. Smith's chances for obtaining other employment will be limited by age of forty-nine, which will make him too old for most of the plants in this area. Employers who are insurance conscious will refuse to hire this man in view of his past two accidents and his present condition.

"In view of his age and limited education, Mr. Smith must be eliminated for any professional, sub-professional or managerial positions. All of these jobs require more education and actual experience than he has.

"Mr. Smith is too old for an apprenticeship in the skilled trades, and his ninth grade education would disqualify him also. Clerical occupations require more education than he has, and his age would be a handicap here also.

"Stockwork requires the use of both hands, as one is required to handle many items of different sizes and shapes. In many stockrooms, one has to climb ladders or stoop to get to the lower drawers and bins. With one hand and with a stiff knee, Mr. Smith would be at a distinct disadvantage.

"The service occupations require two hands, so that Mr. Smith is eliminated here also.

"Finally, Mr. Smith would be limited to a small number of jobs which might be available to him. These would be, for example, as a service station attendant, provided that he have only the responsibility of pumping gas and not changing tires, batteries, or do related work. Also, he might serve as a security guard where a man has only to walk to observe that no unqualified people are entering a given area. Unfortunately, these jobs are low paying, they usually start at the Federal minimum of a dollar sixty an hour. There is not too much security on them and I would say that this man then would be at a distinct disadvantage in terms of earning power if he had to accept these kinds of jobs."

We think the testimony of this witness, who had many years of experience in job placement, is valuable in reflecting the great difficulty Smith faces in finding any substantially remunerative, stable employment. Smith can operate an automobile if it has powersteering, but the insensitivity of his left hand, the damage to the three fingers which can not be spread or closed, and the weakened grip between the index finger and thumb, all make it extremely difficult, if not impossible, for him to operate a truck. The safety factor alone would discourage a potential employer from giving him such work.

In summary, we conclude that the Board was justified in determining that Smith's disability, the effects of which were not fully realized, permanent and partial so long as he was afforded work by his employer that he was able to do, proved to be total and permanent when his employer went out of business and no other work was available to him in the area's labor market. There is nothing in this record to refute this. We think the Board's conclusion is compatible with the principle of Osborne v. Johnson, Ky., 432 S.W.2d 800 (1968).

The judgment is affirmed.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.