RENDERED:  MAY 20, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0522-WC

T-RAD NORTH AMERICA                                                      APPELLANT


                        PETITION FOR REVIEW OF A DECISION
v.              OF THE WORKERS' COMPENSATION BOARD
                           ACTION NO. WC-17-85772


SHANNON BROWN; HONORABLE
GRANT S. ROARK,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                                        APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ACREE, COMBS, AND MAZE, JUDGES.

ACREE, JUDGE:  T-Rad North America appeals the Workers' Compensation

Board's April 9, 2021 order affirming the administrative law judge's (ALJ)

decision to award Shannon Brown permanent total disability benefits.  T-Rad

argues the Board and ALJ erred when they relied on testimony of a physician who

did not rely on the *5th Edition American Medical Association Guides to the Evaluation of Permanent Impairment* (AMA Guides). Finding no error, we affirm.

## BACKGROUND

Brown operated a leak testing machine on a production line for T-Rad. We have not been directed in the record to a clear description of the machine she was operating when she was injured. We can surmise, however, that its operation required her to reach inside to place equipment being tested, and to remove her arms and hands before the machine operated. The machine was apparently designed and built with safety doors and an indicator light that, when operable, would alert her to remove her arms and hands before the machine conducted its test. However, the safety doors and indicator light were removed before the day of Brown's accident.

On that day, March 2, 2017, Brown failed to remove her arms and hands before the machine began operation, resulting in her hand being trapped by the machine for over twenty minutes. She was rushed to the emergency room after her hand was set free.

She was evaluated and found to have no broken bones, but significant swelling. Dr. Frederick Robbe performed trigger releases of her right thumb and index finger. After that, Brown returned to light-duty work, but never fully

recovered from her injuries. In fact, her injuries began to worsen. Because she was unable to perform her job duties, T-Rad terminated her employment.

After termination, Brown worked at a factory for a week, through a temporary service agency, but was let go from that job when her hands began to swell. Shortly thereafter, she found another job, but she was terminated due to excessive absences attributable to her injuries.

In 2018, Brown was evaluated by Dr. Thomas Gabriel at T-Rad's request. According to Dr. Gabriel, Brown had chronic right arm pain, and probable somatoform disorder/somatoform conversion disorder. But he did not believe she met the criteria for diagnosing complex regional pain syndrome (CRPS). He assessed Brown's injuries with an 11% impairment rating under the AMA Guides.

A year later, Brown was evaluated by Dr. Jules Barefoot who diagnosed her with a right arm/hand crushing injury, right thumb/index traumatic trigger finger, CRPS, and status-post right thumb and index finger releases. He assessed a 39% impairment rating under the AMA Guides, but testified the Guides were developed more than twenty years ago and are outdated. Diagnosing her independently from the Guides, he concluded Brown would be unable to ever work again.

Shortly thereafter, Brown filed for temporary total disability (TTD) benefits claiming total disability. At the hearing, the parties found TTD benefits were paid from April 21, 2017, to July 17, 2017, and again from February 1, 2018, to May 9, 2018, at a rate of $566 per week. Brown's average weekly wage was $848.96. Her medical expenses totaled $22,695.35. Following the hearing, the ALJ issued an opinion finding Brown sustained compensable bilateral CRPS due to her work-related injury. The opinion also concluded the AMA Guides do not control the determination of a diagnosis; rather, they are solely utilized in determining the appropriate impairment rating.

The ALJ found Dr. Barefoot's diagnosis reliable and found Brown permanently, totally disabled. The ALJ subsequently found permanent partial disability (PPD) benefits were suspended by any periods TTD benefits were paid. T-Rad appealed to the Workers' Compensation Board which affirmed the ALJ.

This appeal followed.

## STANDARD OF REVIEW

Our review of an opinion of the Workers' Compensation Board is limited. We only reverse the Board's opinion when "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992). In reviewing the Board's opinion, we look to

the ALJ's opinion. The ALJ's findings of fact will not be disturbed if supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984). And, the ALJ, as fact-finder, possesses the discretion to judge the credibility of testimony and weight of evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Our review proceeds accordingly.

## ANALYSIS

T-Rad argues the ALJ overlooked prevailing law and erred by finding Dr. Barefoot's diagnosis and impairment rating consistent with AMA Guides. The ALJ and the Board stated that the *5th Edition of the AMA Guides to the Evaluation of Permanent Impairment* are just guides in the evaluation and are not to be relied upon in diagnosing conditions.

In *Plumley v. Kroger, Inc.*, our Supreme Court determined that physicians were entitled to conclude for themselves which methods should be used to evaluate their patients. 557 S.W.3d 905 (Ky. 2018). Said the Court:

> To be grounded in the [AMA] Guides is not to require a strict adherence to the [AMA] Guides, but rather a general conformity with them. We also note that the Court of Appeals in *Brasch-Barry*[1] seemingly also did not require strict adherence to the [AMA] Guides: "An ALJ cannot choose to give credence to an opinion of a physician assigning an impairment rating that is not based upon the AMA Guides." An opinion that is based upon the [AMA] Guides is different from one that strictly adheres to the [AMA] Guides.

---

[1] *Jones v. Brasch-Barry General Contractors*, 189 S.W.3d 149 (Ky. App. 2006).

-5-

*Id.* at 912-13 (footnotes omitted).

We are not persuaded by T-Rad's argument that the ALJ's reliance on Dr. Barefoot's assessment was error because it deviated from the AMA Guides. Partial disability payments factor in "the permanent impairment rating . . . as determined by the 'Guides to the Evaluation of Permanent Impairment,'" Kentucky Revised Statute (KRS) 342.730(1)(b), which KRS 342.0011(35) defines as being, the "percentage of whole body impairment" that an injury causes "as determined by" the latest edition of the *Guides*. However, neither statute finds this factor to be the equivalency of a physician's diagnosis. Our jurisprudence treats the two as separate.

In *Tokico (USA), Inc. v. Kelly*, the Supreme Court expressed the position that a diagnosis does not need to conform strictly to the Guides. It stated:

> Chapter 1 of the Fifth Edition discusses the *Guides*' philosophy, purpose, and appropriate use. Page 11 acknowledges that "some medical syndromes are poorly understood," that physicians must use clinical judgment when assigning impairment ratings, and that "clinical judgment, combining both the 'art' and 'science' of medicine, constitutes the essence of medical practice." Diagnosing what causes impairment and assigning an impairment rating are different matters. Diagnostic criteria stated in the *Guides* clearly have relevance when judging the credibility of a diagnosis, but Chapter 342 does not require a diagnosis to conform to criteria listed in the *Guides*.

281 S.W.3d 771, 774-75 (Ky. 2009).

The ALJ must decide the legal significance of conflicting medical evidence regarding diagnoses and the reviewing court cannot reweigh the facts leading to the ALJ's decision on this point. KRS 342.285. The ALJ has sole discretion in determining the weight, credibility, quality, character, and substance of evidence and the inference to be drawn from the evidence. *Paramount Foods*, 695 S.W.2d at 419. The ALJ has the discretion to choose which witnesses and which testimony to believe. *Addington Res., Inc. v. Perkins*, 947 S.W.2d 421, 422 (Ky. App. 1997). The ALJ may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it came from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Disc. Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

Here, the ALJ chose to believe Dr. Barefoot's analysis of Brown's injuries. Dr. Barefoot offered a reasonable explanation for the basis of his conclusion. Therefore, we cannot be persuaded by T-Rad's argument that the Board and the ALJ erred here.

T-Rad also argues the ALJ erred in relying on Dr. Barefoot's testimony to make a total disability award. Again, we are not persuaded.

Brown testified she was unable to return to work due to her injuries. She made multiple attempts to find gainful employment after the injury but was unsuccessful. There was no evidence showing Brown was able to meet the

-7-

demands of her pre-injury work duties. Applying *City of Ashland v. Stumbo*, 461 S.W.3d 392 (Ky. 2015), the ALJ properly determined she was entitled to a total disability award. In accordance with *City of Ashland*, the ALJ undertook a "five-step analysis" to determine whether a claimant is totally disabled. *Id.* at 396. The steps, or factors, the ALJ addressed were: (1) whether the claimant suffered a work-related injury; (2) what, if any, impairment rating the claimant has; (3) the permanent disability rating; (4) whether the claimant is able to perform any type of work; and (5) that the total disability is the result of the work injury. We find no basis for reversal in the ALJ's application of this analysis.

Lastly, T-Rad argues the ALJ erred by awarding PPD and PTD benefits for the same injury. In *Dolt & Dew, Inc. v. Smith*, this Court said, "[T]he Board was justified in determining that Smith's disability, the effects of which were not fully realized, [was both] permanent and partial so long as he was afforded work by his employer that he was able to do, proved to be total and permanent when his employer went out of business and no other work was available to him in the area's labor market." 493 S.W.2d 711, 713 (Ky. 1973).

Here, Brown made multiple attempts to return to work after her injury but was physically unable to do so. Her disability was not fully realized until she was unable to perform her last job. The ALJ found Brown was only partially disabled, but despite her best effort, could not return to work. It was then, and only

then, that the permanency of her disability was realized.  Thus, both awards were necessary.

## **<u>CONCLUSION</u>**

Based on the foregoing, we affirm the Board's April 9, 2021 order.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Samuel J. Bach | James R. Martin II |
| Henderson, Kentucky | Lexington, Kentucky |