James R. YOCOM, Commissioner of Labor, etc., Appellant,

v.

Robert E. GENTRY et al., Appellees.

EBONITE COMPANY, Appellant,

v.

Robert E. GENTRY et al., Appellees.

Supreme Court of Kentucky.

March 26, 1976.

Earl M. Cornett, Gen. Counsel, Dept. of Labor, Frankfort, Cyril E. Shadowen, Asst. Counsel, Louisville, for appellant James R. Yocom.

John M. Dixon, Jr., Ben S. Fletcher, Turner & Dixon, Hopkinsville, for appellee Robert E. Gentry.

Thomas L. Ferreri, Thomas E. Turner, Mills, Mitchell, Turner & Donan, Madisonville, for Ebonite Co.

JONES, Justice.

This case involves a claim by Robert Gentry for the occupational disease of asbestosis. The Workmen's Compensation Board found Gentry to be partially and permanently disabled to the extent of 50%. The Board found Gentry was last injuriously exposed to the hazards of the disease during a period of six months or more, while employed by the Ebonite Company. The Board further found that Gentry's disabili-

ty had not been conclusively proven to be the result of his last injurious exposure. Gentry was awarded temporary-total disability benefits of $60.00 per week from August 21, 1972, through December 1, 1972; and $27.00 per week for a period of 400 weeks thereafter. Ebonite was required to pay medical benefits not to exceed $3500.00. All the disability benefits were placed on the Special Fund. The Special Fund filed a petition for reconsideration. It contended that there should have been an apportionment of 60% of the liability assessed against Ebonite. The Special Fund's petition for reconsideration was overruled.

The Special Fund and Ebonite filed separate appeals in Christian Circuit Court. The trial court sustained the opinion and award of the Board. Both the Special Fund and Ebonite filed separate appeals to this court with joint motions that the appeals be consolidated. The joint motions are sustained. The appeals are consolidated.

The Special Fund contends that the Board erred in finding that it failed conclusively to prove that Gentry's disability was the result of his last injurious exposure. It contends also that all of the temporary-total benefits awarded Gentry should have been assessed against Ebonite.

Ebonite's sole contention of error is that Gentry's claim for permanent disability benefits should be precluded as being premature.

At the time of Gentry's work-related injury, he was 27 years old, was married and had three children. He had worked for Ebonite three and one-half years as an inspector in the Plastics Department of Ebonite, who manufactured bowling balls made from asbestos and fiberglass. Prior to his work at Ebonite, Gentry served in the U.S. Air Force five years. Before that he worked as a grocery clerk.

Gentry became disabled on August 21, 1972, while exposed to asbestos and fiberglass dust. A short time later he was seen and examined by the company doctor, Bennett L. Crowder. Gentry was admitted to the hospital where he remained until September 2, 1972. He was re-admitted Sep-

tember 24, 1972, and remained there for one week. A lung biopsy was performed. Dr. Crowder advised Gentry that asbestos and fiberglass were found in both lungs. Gentry returned to work at Ebonite in December 1972, with strict instructions by Dr. Crowder that he wear a face mask. He was placed in another part of the plant, and eventually his services were terminated. He again worked for Ebonite during April and May, 1973. Gentry obtained other employment which he was unable to perform due to his occupational disease. He still experiences chest pains. He has shortness of breath and cannot work at any occupation causing physical exertion.

█ This court deals first with Ebonite's contention that Gentry's claim should be precluded as being premature. There is absolutely no merit to that argument. Ebonite ought to be grateful that the Board failed to place the burden of liability for all of Gentry's benefits on it. In its zeal to avoid any liability, it argues that Gentry's present employment at Krogers makes his claim against it premature. The fact that Gentry obtained another job is merely some evidence on the question of the extent of his disability. *Osborne v. Johnson*, Ky., 432 S.W.2d 800 (1968). That matter was considered by the Board.

As in most cases of this type, the medical evidence is conflicting. This court has held that, "where medical testimony is concerned, and that testimony is conflicting, the question of who to believe is one exclusively for the Board." *Young v. Burgett*, Ky., 483 S.W.2d 450 (1972). The Board chose to believe the medical testimony that Gentry contracted the disease by breathing asbestos and fiberglass particles. It further believed Dr. Calhoun's testimony that the "prognosis indicated a progressive disease, which will shorten Gentry's life and cause him a considerable amount of disability." The Board also believed the testimony of Dr. Crowder, the company doctor, who testified that Gentry had asbestosis with functional disability of 40% to the lungs and 20% disability to the body as a whole.

■ The argument of the Special Fund has merit. In its brief it states:

"Since claimant [Gentry] became disabled in the year 1972 the Special Fund would be obligated to pay the whole award for permanent disability benefits except KRS 342.316(12)(a) provides that the employer liable for compensation—'shall be the employer in whose employment the employee was last exposed to the hazard of such occupational disease during a period of six months or more.'"

Another provision that imposes liability on the Special Fund is also contained in KRS 342.316(12)(a), which further provides, however, that:

"In those cases where disability or death are not conclusively proven to be the result of such last exposure all compensation shall be paid out of the special fund."

KRS 342.316(12)(a) then provides that in all cases where the Special Fund is not wholly liable,

". . . compensation for disability or death due to such diseases shall be paid jointly by the employer and the special fund, and the employer shall be liable for 60 per cent of the compensation due and the special fund shall be liable for 40 per cent of the compensation due."

Ebonite argues that there is slight exposure to asbestos particles by the general public and that any exposure Gentry may have had was not work-related. It contends that Gentry had sufficient multiple exposure under the provisions of KRS 342.-316(12)(a) to relieve it from paying 60% of the award. That is a feeble contention under the circumstances of this case. It is supported only by the testimony of Dr. Anderson, who testified that members of the general public without any work-related industrial exposure, could have asbestos bodies in their lungs. Perhaps that is the reason the Board held that the Special Fund had not met its burden that Gentry's disability arose solely as a consequence of his employment by Ebonite.

The Special Fund had an insurmountable task to pinpoint the source of an occupational disease where there were hazards of the disease in multiple employment in Gentry's case. The only significant exposure of Gentry to the hazards of the disease was with Ebonite. Therefore, Ebonite should bear the burden of paying a substantial portion of the award. Both the Board, as well as the trial court, erred in requiring the Special Fund to pay Gentry the total amount.

The judgment of the Christian Circuit Court is reversed with directions to remand the case to the Board for proper apportionment. Ebonite is required to pay Gentry 60% of the award; the Special Fund shall pay 40% of the award.

All concur.